IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT
OF PENNSYLVANIA

John Greene

7901 Henry Avenue
Apt. A-209
Philadelphia, PA  18128

and

Jan T. Sklaroff                                              Jury Trial Demanded
*56 Oak Knoll Drive*
*Berwyn, PA  19312*

       Plaintiffs

    v.

School District of Philadelphia,                    Civil Action No.: 08-CV-4163

Andrew Rosen, Esquire,
Hiromi Hernandez,
John Frangipani,
Adrienne Carpenter,
Wilfredo Ortiz,
*c/o School District of Philadelphia*
*440 North Broad Street*
*Philadelphia, PA  19130*

Philadelphia Federation of Teachers
Joseph Pizzo,
Viola Curry,
Jackie Scott,
Barbara Gordon,
Jerry T. Jordan,
*c/o Philadelphia Federation of Teachers*
*1816 Chestnut Street*
*Philadelphia, PA  19103*
   Defendants

<u>SECOND AMENDED CIVIL COMPLAINT</u>

(Alleging violations of 42 U.S.C. §1983, §1985 and of Amendments 1, 5 and 14 of the United States Constitution.  Also including causes of action for defamation and intentional infliction of emotional distress.)

I.      <u>THE PARTIES</u>

1.      The plaintiff is John Greene, an adult individual who is a citizen and resident of the United States and the Commonwealth of Pennsylvania.  Mr. Greene resides at 7901 Henry Avenue, Apt. A-209, Philadelphia, Pa. 19128.  At all times pertinent to this complaint, Mr. Greene was a long term substitute teacher employed by defendant School District of Philadelphia and a member in good standing of the Philadelphia Federation of Teachers.  At all times pertinent to this complaint, plaintiff Greene was assigned to either the Cramp Elementary School or and subsequent thereto to Furness High School, both located in Philadelphia, Pa., and part of the Philadelphia School District.

2.      The plaintiff is Jan T. Sklaroff, and adult individual who is a citizen and resident of the United States and of the Commonwealth of Pennsylvania.  Mr. Sklaroff resides at 56 Oak Knoll Drive, Berwyn, Pa. 19312.  At all times pertinent to this complaint, Mr. Sklaroff was a teacher employed by defendant School District of Philadelphia and a member in good standing of the Philadelphia Federation of Teachers.  At all pertinent times, Mr. Sklaroff was a teacher at Furness High School, located in Philadelphia, Pa., and part of the Philadelphia School District.

3.      Defendant School District of Philadelphia is the organization which administers and staffs the schools located within the city of Philadelphia.  This entity's operations are authorized by the Commonwealth of Pennsylvania.  At all pertinent times, this defendant was the employer of plaintiff John Greene and of plaintiff Jan Sklaroff.

4.     Defendant Andrew M. Rosen, Esquire is the Director of Employee Relations of the School District of Philadelphia, and, in such position, rendered decisions regarding the employment of both plaintiffs and either created policy or followed established policy regarding attempts to terminate the employment of each plaintiff.   This defendant also was responsible for payroll decisions regarding each plaintiff.

5.     Defendant Hiromi Hernandez is an employee of the School District of Philadelphia.  At all times pertinent to the allegations of this complaint, she was the principal of Furness High School which is located within the boundaries of Philadelphia, Pa.  At present she is believed to have been reassigned to another position by defendant School District of Philadelphia.

6.     Defendant John Frangipani is an employee of the School District of Philadelphia.  He held, at all pertinent times, a position entitled "South Regional Superintendent," which involved, inter alia, participation in disciplinary proceedings involving teachers and other employees.

7.     Defendant Adrienne Carpenter is an employee of the School District of Philadelphia.  At all times pertinent to the allegations of this complaint, she was (and remains) the principal of Cramp Elementary School which is located within the boundaries of Philadelphia, Pa.

8.     Defendant Wilfredo Ortiz is an employee of the School District of Philadelphia. He held, at all pertinent times, a position entitled "District Regional Superintendent," which involved inter alia, participation in disciplinary proceedings involving teachers and other employees.

9.     Defendant Philadelphia Federation of Teachers is an organization which acts as the union representing teachers and certain other personnel employed by the School District of Philadelphia.  As such, it collects dues from its members, makes decisions regarding representation of its members, either by union representatives or by its lawyers.  All entities noted in this paragraph are the

recipients of and paid through mandatory union dues which are collected from every member of the Philadelphia Federation of Teachers.

10. Defendant Joseph Pizzo is and has been a union representative employed by and associated with the Philadelphia Federation of Teachers.  At all pertinent times he was a "P.F.T. Staffer" covering Furness High School.

11. Defendant Viola Curry is and has been a union representative employed by and associated with the Philadelphia Federation of Teachers.  At all pertinent times she was a "P.F.T. Staffer" covering Cramp Elementary School.

12. Defendant Jackie Scott is and has been a union representative employed by and associated with the Philadelphia Federation of teachers.  At all pertinent times she was a "P.F.T. Staffer" covering Cramp Elementary School.

13. Defendant Barbara Gordon is and has been a member or the head of the "grievance department" and is therefore employed by and associated with the Philadelphia Federation of Teachers.

14. Defendant Jerry T. Jordan holds and has held the position of Director of Staff of the Philadelphia Federation of Teachers.

II.     JURISDICTION

15. Jurisdiction for this action is derived from 28 U. S. C. Section 1343 and 28 U. S. C. Section 1367.

16. The terms and conditions of employment for teachers, including plaintiffs John Greene and Jan T. Sklaroff, at all times pertinent to this litigation, were governed by a collective bargaining agreement between defendant Philadelphia Federation of Teachers and defendant School District of Philadelphia.  The pertinent agreement in this case was in effect between September 1, 2004 and August 31, 2008.

4

17.  Plaintiffs, as public employees under Pennsylvania law, at all times pertinent to this litigation, have "possessed property rights in continued employment," as determined by the U. S. Supreme Court in the case of <u>Cleveland Board of Education</u> v. <u>James Loudermill, et al.,</u> 105 S. Ct. 1487, 1491, (1985).

18.  The defendants, acting both in concert in varius combinations and, on certain occasions acting on an individual basis, sought to and did, on numerous occasions deprive plaintiffs Greene and Sklaroff of rights secured by the U. S. Constitution under the color of statutes, ordinances and regulations of the Commonwealth of Pennsylvania.

19.  All of the individual defendants are believed to be long term employees of either defendant School District of Philadelphia or of the Philadelphia Federation of Teachers.

20.  For sociological and other reasons beyond the scope of this litigation, numerous schools of the school District of Philadelphia are beset by a certain percentage of students who are prone to violence, abusive behavior, abusive and obscene language, general unruliness and defiance of authority.

21.  In recognition of this problem within the school system, an entity called the "Safe Schools Hotline" was established, theoretically, so that incidents of violence could be reported and, in general, to assist and maintain a level of order within the schools.

22.  In spite of such a measure, it is believed that the level of incidents of out of control behavior, including verbal and physical abuse by certain students has not been curbed.

23.  Because such incidents are so numerous, reporting and discipline of offending students, if done in a conscientious manner, would require extensive time and effort by the various actors within the school system.

24. It is believed, and therefore averred by the plaintiffs that all defendants have determined that to actively discipline offending students, by suspension or by expulsion, would publically expose the problems within the system, and that such exposure would be an undesired result.

25. It is believed, and therefore averred, that a conscious effort is made to deny as many episodes of student violence, abuse or other similar behaviors, as possible in order that statistics not reflect such incidents, and in order that such incidents not be made known to the public and taxpayers of Philadelphia.

26. As a result of such decisions and efforts, it is believed that the plaintiff and other teachers who witness or are victims of abusive student behavior are themselves subject to retribution from the named defendants or others within the School District and/or Philadelphia Federation of Teachers when they report such behavior.

27. Defendants, in various combinations as will be set forth below, have acted in unison and/or individually to deny the plaintiffs due process of law to which they are entitled under Loudermill, supra., p. 1493, and as set forth under the terms and conditions of the collective bargaining agreement described in paragraph 15 supra (hereafter referred to as the "CBA").

28. In the spring 2007, plaintiff John Greene was employed as a long term substitute teacher at the Cramp Elementary School in Philadelphia.  The principal of Cramp Elementary School was defendant Adrienne Carpenter.

29. While teaching a class at Cramp Elementary School, a particular student exhibited extreme behavior, for no apparent reason, including threatening and shouting of obscenities.  Plaintiff Greene sought to calm the situation and to maintain control of the class.  This occurred on March 27, 2007.

30. Following his reporting of the incident to Principal Carpenter, plaintiff Greene became the recipient of a disciplinary complaint initiated by defendant Carpenter, based upon allegations which were either completely false and/or of such trivial nature that they were of no importance or significance.

31. As part of the "evidence" gathered to support the principal's "charges" against Mr. Greene, defendant Adrienne Carpenter solicited statements from minor students, and advised said students of what to say, and/or completely fabricated allegations.   When Carpenter falsely accused two students of bullying the misbehaving student, plaintiff Greene reported this to the Safe Schools Hotline. Carpenter then falsely accused Greene of assigning students to bully that student.   Because Greene, who had witnessed the entire incident noted in paragraph 28, sought to protect students who had no involvement in the incident, Carpenter retaliated against him by writing up a false disciplinary report (called 204 report) and holding a "conference."

32. Defendant Carpenter also utilized a minor administrative matter involving record keeping, to further charge Mr. Greene with some sort of offense under the CBA.

33. Defendant Greene at all stages sought to defend himself against the baseless charges with which he was confronted.  His union representative was defendant Jackie Scott, who was indifferent, ineffective and did not in any way act to protect the interests of plaintiff Greene.

34. The end result of the disciplinary action was that a suspension was imposed on plaintiff Greene, of two days for a minor administrative matter involving record keeping.  The recommendation was that of principal Carpenter, and was made on June 14, 2007, three months after the incident.  Defendant Carpenter had also subjected plaintiff to two baseless allegations, which were dropped at that time.

35.   Mr. Greene properly followed all steps to appeal such recommendation, under the terms of the CBA, including properly ascertaining that a grievance, as allowed by the CBA, was filed on his behalf.

36.   Said grievance, although filed on or about June 27, 2007, has never been scheduled for hearing, even though it was filed more than one year ago and even though the CBA requires prompt attention and, if necessary, prompt hearing on such grievance.  Defendant Barbara Gordon has the responsibility for processing grievances and is believed to have taken no steps to advance the grievance of plaintiff Greene.

37.   At some time shortly after the imposition of the two day suspension, two days of pay, was deducted from Mr. Greene's regular salary.  On or about December 6, 2007, East Regional Superintendent Wilfredo Ortiz, recommended a three-day suspension for the above noted incident wherein a two day suspension had already been recommended and implemented.  This action was in full violation of the CBA provisions.  Said memo was sent improperly, to Hiromi Hernandez, at Furness High School, where Greene had taken a position.  No notice of Ortiz recommendation was sent to Greene.  Ortiz's recommendation to increase the two-day suspension was in violation of the CBA.  No proper notice of these "activities" was ever sent to MR. Greene, in full violation of procedures mandated in the CBA.

38.   In September 2007, Greene was assigned a long term substitute teaching position at Furness High School for the first semester of the 2007-2008 school year.  This assignment was subsequently extended, first to January 29, 2008 and then to June 30, 2008.  Said extension was done in full compliance with the CBA and other regulations.  Greene's teaching assignment was to be an English as a Second Language teacher.   (Known as "ESOL") at Furness High School.

39.   The principal of Furness High School at all times pertinent to the allegations of this Complaint was Hiromi Hernandez.  As of a certain date in August 2008, it is

8

believed that Hernandez was reassigned to another position by defendant Philadelphia School District.

40. Defendant Hernandez was known to perform her responsibilities in an erratic and arbitrary fashion. Her behavior was vindictive and punitive. She is a person with several deep-seated and irrational biases, based on color, nationality and ethnicity. She was uniquely unsuited in temperament, intelligence and personality to be the principal of a major metropolitan high school.

41. The professional and personal flaws of Hernandez were well-known to all of the named defendants who had any personal and/or professional contact with her. Both the Philadelphia School District and the PFT had full knowledge of her eccentricities, erratic and punitive behavior for a period of several years, yet did nothing to protect the students and teachers whose lives and careers she impacted in negative fashion.

42. Hernandez routinely violated provisions of the CBA regarding teacher discipline, and the PFT with full knowledge of said violations, in effect conspired with her to deprive its members (teachers) of their civil rights by doing nothing to properly defend its members or to seek sanctions against Hernandez.

43. Plaintiff John Greene is an effective teacher and he was popular with his students in the ESOL course. Said class included students of many different ethnicities.

44. In October 2007, defendant Hernandez began to harass Greene including switching his roster, replacing upperclassmen with first year students. Hernandez's expressed justification for said action was that she was the principal and could do whatever she wanted. Her actions were, in fact, overt harassment, and without any justification by provisions of the CBA and/or in direct violation of said provisions.

45.  When plaintiff Greene advised defendant Hernandez that he had been properly assigned to his position by substitute services and that any reassignment could only properly be done through that office, Hernandez threatened to have plaintiff Greene removed from the building without cause.

46.  After Greene confirmed that he was properly to remain at Furness and so advised Hernandez, Hernandez assigned Greene to the teacher's lounge and replaced him with a teacher who has no ESOL experience.  Said actions are believed to have been unauthorized by any of the CBA or any other provisions governing teacher assignments.

47.  In response, defendant Hiromi Hernandez solicited and directed students to prepare written letters criticizing plaintiff John Greene.

48.  Defendant Hiromi Hernandez then initiated disciplinary proceedings against plaintiff Greene in an attempt to have his employment terminated.

49.  In this disciplinary process, now scheduled for what is called a level 2 hearing in the CBA, defendant Hernandez seeks termination of Mr. Greene's employment with the School District of Philadelphia.  Said hearing was scheduled for September 3, 2008.  However, plaintiff Greene was advised that no further processing of his defense will be undertaken by defendants, despite the fact that proceedings were not concluded.

50.  Among the reasons submitted for seeking termination of plaintiff Greene is the fact that he had disciplinary action taken against him while at Cramp Elementary School.  (see par. 27 to 33 above)

51.  Such an action is directly contrary to pertinent provisions of the CBA, which at page 51 provides that a prior grievance must be decided upon before the School District may take an action on a new matter.  That is particularly true in this instance, where one of the bases for seeking termination of plaintiff Greene's employment is the existence of the prior, as yet unresolved "charge."

10

52.   The action threatened against plaintiff Greene, would, therefore, be a violation of his due process rights as set forth in <u>Loudermill, supra</u>.  It would amount to termination of his position (a "property right") without him having been afforded the process due him under the provisions of the CBA.

In the summer 2008, one of more of the above defendants, with full knowledge and approval of defendant Andrew Rosen, made arrangements for a third suspension day's pay to be deducted from the salary of plaintiff Greene, purportedly to complete the suspension action dating from Cramp Elementary School.

One full day's pay was improperly deducted from Mr. Greene's salary, despite the "penalty" having been set at two days, which were deducted months previously. It is believed that defendant Ortiz's improper recommendation of December 2007 caused this to occur.

53.   This improper and illegal deduction without any notice or hearing as provided for by the CBA was a direct violation of the due process rights of plaintiff Greene.

54.   The use of fraudulently obtained and coerced statements from students in a disciplinary action against plaintiff Greene constitutes a violation of Pennsylvania law, specifically 18 Pa. C.S.A. 6301, which prohibits adults to corrupt the morals of any minor.

55.   The solicitation and use of such statements, particularly without full parental involvement and consent, is a violation of any principles of fairness and due process rights of every teacher who has been required to respond to such nameless, faceless and manufactured charges at a CBA authorized stage of the disciplinary process.

11

56.   Submission of false statements to authorities is a crime in Pennsylvania, pursuant to the provision of 18 Pa. C. S. Section 4904.

57.   Plaintiff Greene at all times sought to present his version of events, to fight all charges against him as he had been brought by defendant's Carpenter and to have said charges judged baseless, as they were.

58.   Defendants Curry, Scott, Gordon and Jordan all were, in some manner or fashion, by contract and/or by job assignment, charged with processing grievances as were filed by plaintiff Greene.  Yet, each and every one of these defendants either failed to take any action to protect the employment or the employment status of plaintiff Greene, or left him vulnerable to the defendant Hernandez.

59.   The above defendants, by actions and/or inactions directly colluded with defendant Hernandez to eliminate the property rights afforded to plaintiff Greene under the CBA, by denying him his rights to defend himself against complaints filed against him.

60.   All of the defendants named in paragraph 58 were directly contacted by plaintiff Greene and asked to properly represent him and all failed to either notify him of the progress of his case or to do anything.

61.   The intent and result of the inactions of defendants Curry, Scott, Gordon and Jordan was to fully deprive defendant Greene of any right to defend himself against the baseless charges of defendants Carpenter and Hernandez, depriving him of his due process rights allowed under the CBA.

62.   Plaintiff Greene was also, in effect, punished for exercising his constitutionally protected right of freedom of speech, in that all charges against him followed his contact with the Safe Schools Hotline, wherein he set forth information regarding student violence in his class.

63.  Effectively, the union's nonactions and cooperation with the School District defendants forced plaintiff Greene to resign.

64.  Jan T. Sklaroff was formerly a teacher in the Philadelphia School District who taught primary English at Furness High School beginning about October 15, 2006.  The principal at Furness at that time was, as noted Hiromi Hernandez.

65.  At the inception of his time teaching at Furness, Hiromi Hernandez took steps to harm Mr. Sklaroff, and/or to make it impossible for him to teach his classes without some severe form of interference.

66.  During most, if not all classes taught by Mr. Sklaroff,  principal Hernandez had an off duty teacher stationed in the classroom, not to assist Mr. Sklaroff, but to heckle him, and to encourage student unrest.  Said assignment is not believed to have been authorized by the CBA.

67.  On or about March 30, 2007, after seeking to quell the attacks of one student upon another with a stapler, and after being threatened by students that they would "mess him up," Mr. Sklaroff was removed from his classroom by edict of Hiromi Hernandez, as set forth in a letter, which she sent to Mr. Sklaroff.

68.  Plaintiff Sklaroff had also made contact with the Safe Schools Hotline to report an incident of violence by a student.

69.  Hiromi Hernandez solicited a series of complaints about Mr. Sklaroff from students, removed him from his classroom, and had him report to an outer building where he was under surveillance for the entire school day while he was there, where his liberty and freedom were restricted.

70.  Plaintiff Sklaroff's attempts to defend himself against a false set of allegations believed to have emanated from Hernandez were rendered useless by his union representative, defendant Joseph Pizzo.

71. Defendant Pizzo took no steps to challenge the false allegations leveled by Hernandez, which included touching students and harassing students.  It is believed that Pizzo was fully aware of Hernandez's methodology.

72. Defendant Philadelphia Federation of Teachers would not provide legal assistance to Plaintiff Sklaroff, despite his and his private attorney's request for such assistance, as defendant Pizzo did nothing to assist Mr. Sklaroff in fighting baseless disciplinary proceedings.

73. Prior to the initiation of Hernandez's charges against him, Mr. Sklaroff had never had any sort of disciplinary charges made against him while with the School District of Philadelphia.

74. Even though fabricated, the charges leveled against plaintiff Sklaroff would and should not have ever resulted in termination of Mr. Sklaroff, who, as noted, had no preexisting disciplinary history within the School District of Philadelphia. Nevertheless, defendant Hernandez was actively seeking his termination.

75. Having no ability to have his own private counsel present, and receiving no assistance from defendant Joseph Pizzo, Plaintiff Sklaroff became despondent over his plight.

76. For about three weeks, Mr. Sklaroff reported to his isolated room in the basement of a school district building, where he was required to sign in and led to believe that he was to remain in a confined area.

77.  During this period, Mr. Sklaroff's despondence led to hospitalization for psychiatric reasons.

78. It is believed that defendant Hernandez's actions were in violation of or in no way authorized by the CBA.

79. It is believe that defendant Hernandez's individualized punishment of Mr. Sklaroff was specifically intended to cause Mr. Sklaroff severe emotional distress, which it did.

80. Plaintiff Sklaroff began to receive psychological and/or psychiatric treatment directly as a result of the actions of defendant Hernandez and the actions or inactions of other of the defendants.

81. On or about April 19, 2007, under the advice of defendant Pizzo, Mr. Sklaroff signed a predated resignation letter, due to the extreme psychological pressure that was forced on him by defendant Hernandez's treatment of him.

82. The predated resignation letter was dated April 13, 2007, even though signed on or about April 19, 2007.  The effective date of resignation was set as April 13, 2008.  It is believed that the resignation letter was either dragged by defendant Rosen, or by defendant Pizzo in consultation with Rosen and/or his staff.

83. Shortly after signing the resignation, Mr. Sklaroff realized that he wished to rescind it.

84. It is believed that defendant Pizzo, on behalf of the Philadelphia Federation of Teachers, actively conspired with some or all of the School District of Philadelphia defendants to force, deceive or trick Mr. Sklaroff into resigning and thereby, relinquish the protections he had under the CBA.

85. In furthering the aforesaid goals, and with advice of defendant Rosen and/or his staff, defendant Pizzo had Mr. Sklaroff sign a predated resignation letter, thereby making it impossible for Mr. Sklaroff, under School District Policy, to rescind said resignation once it was signed and submitted.

86. In making Mr. Sklaroff sign such a resignation letter, Pizzo also made it virtually impossible to obtain unemployment compensation benefits, thereby

benefitting the School District financially, and further violating plaintiff Sklaroff's right under the CBA.

87. Pizzo took these steps solely to appease and curry favor with defendant Hernandez.

88. All of the disciplinary events and alleged complaints directed at Mr. Sklaroff by Defendant Hernandez followed Mr. Sklaroff's contact of the aforesaid Safe Schools Hotline to report incidents of student violence in his classroom.  As such, such actions of defendant Hernandez were in violation of the constitutionally protected first amendment rights of free speech of Mr. Sklaroff.

89. Plaintiff Sklaroff's request to rescind his resignation was denied by the school district.

90. Plaintiff later learned that, had his resignation set a future date for its taking effect, school district policy would have allowed him to rescind the resignation as a matter of course.

91. Defendant Pizzo's participation in said resignation letter was, at least, grossly negligent, and/or was merely reflective of his indifference and/or hostility to a union member that he was paid to represent.

92. Pizzo, as an experience PFT staffer, is believed to have known all policy of the school district regarding the rescission of resignations, yet he is believed to have purposefully predated the effective date of the resignation to assure defendant Hernandez that her attempts to terminate Mr. Sklaroff's position were successful.

93. These efforts are believed to be evidence of a conspiracy to deprive plaintiff Sklaroff of his civil rights.

94.  Subsequently, when Mr. Sklaroff applied for unemployment compensation, defendant School District of Philadelphia purposefully refused to submit evidence which would confirm that Mr. Sklaroff was about to be terminated when he submitted his resignation; thereby causing him not to obtain unemployment benefits.

95.  Defendant Andrew Rosen has subsequently confirmed in writing that Mr. Sklaroff's resignation was negotiated and/or permitted in lieu of termination.

96.  Defendants Jackie Scott and Viola Curry are named as defendants for their failure to represent plaintiff Greene with any level of diligence and for their failure to aggressively pursue the process to which he is entitled under the CBA. Defendant Jordan is named as a defendant for his failure to respond to documented complaints from Union membership regarding the Union's representation of its members.

97.  Defendants Frangipani and Ortiz are named as defendants for their failures to put a stop to arbitrary and baseless disciplinary proceedings initiated by other named defendants, with respect to both plaintiffs.

98.  Plaintiffs also assert the cause of action of action of defamation against applicable defendants who knowingly spread falsehoods about the plaintiffs with the specific intents to cause them damage.

99.  Plaintiffs have, therefore suffered damages through the above said actions of the defendants, who willfully conspired to deprive them of property rights under color of state law and, therefore violated the provisions of 42 U. S. C. § 1983 and §1985.  The named defendants, by their actions, caused plaintiffs to not be afforded the due process rights to which they were entitled.

100. Plaintiffs are entitled to compensation for attorney's fees which they have accrued due to the actions of the defendants.

WHEREFORE, plaintiffs demand judgment against defendants jointly and severally in an amount in excess of $500,000.

<u>JURY DEMAND</u>

Plaintiffs request a trial by jury.

Respectfully submitted,

Ellis M. Saull
Attorney for Plaintiffs John Greene and
Jan T. Sklaroff
Pa. ID #16460
105 Town Center Rd, Suite One
King of Prussia, Pa.19406
(610) 768-0222